UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATASCHA BRAUSS, )<br>      Plaintiff, )<br>)<br>  v. )<br>)<br>UNITED PARCEL SERVICE, )<br>)<br>      Defendant. )<br>_____ ) | NO. CV-09-356-LRS<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT** |

**BEFORE THE COURT** is the Defendant's Motion For Summary Judgment (Ct. Rec. 13). The motion is heard without oral argument.

**I. BACKGROUND**

This is an employment discrimination case. Plaintiff asserts federal claims under 42 U.S.C. Section 2000e *et seq.* (Title VII) for discrimination based on gender in conjunction with her unmarried status.[1] She asserts the same claims under the Washington Law Against Discrimination (WLAD), RCW Chapter 49.60.[2] These claims arise out of Plaintiff's employment by the Defendant, United

---

[1] Title VII does not protect marital status. 42 U.S.C. Section 2000e-2(a). Marital status alone is insufficient under Title VII. *Fisher v. Vassar College*, 70 F.3d 1420, 1433 (2nd Cir. 1995).

[2] Marital status, by itself, is sufficient under the WLAD. RCW 49.60.180.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

Parcel Service (UPS).

## II. FACTS

The Plaintiff has not filed a "Statement Of Material Facts" in response to Defendant's "Statement Of Material Facts" (Ct. Rec. 15). Accordingly, per LR 56.1(d), the court may assume the facts as claimed by Defendant, the moving party, are admitted to exist without controversy. Nevertheless, the court has reviewed all of the materials submitted in support of Defendant's "Statement Of Material Facts," including in particular the excerpts from the transcript of Plaintiff's deposition, as well as Plaintiff's "Response Declaration" (Ct. Rec. 24), and the declaration of Plaintiff's therapist, Michael Lipstein (Ct. Rec. 25). The relevant facts, as gleaned from these materials, are discussed below in conjunction with the court's analysis of Plaintiff's legal claims.

## III. DISCUSSION

### A. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 2

burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

### B. Exhaustion Of Administrative Remedies

Title VII limits a district court's jurisdiction to claims that are either included in an EEOC (Equal Employment Opportunity Commission) charge or are based on conduct subsequent to the EEOC charge which is reasonably related to that alleged in the EEOC charge. 42 U.S.C. Section 2000e-5(f)(1); *Ong v. Cleland*, 642 F.2d 316, 318 (9th Cir. 1981).[3] Plaintiff did not file an EEOC charge specifically directed at her November 2008 discharge. The charge she did file pertained to her May 2008 discharge and it was filed in September 2008. Arguably, however, the May 2008 discharge and the November 2008 discharge are reasonably related. In any event, as discussed below, the court finds as a matter of law that Plaintiff cannot establish a prima facie case of discrimination with regard to either discharge.

---

[3] The court is not aware of there being a similar requirement with regard to the WLAD.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

## C. Disparate Treatment

It is not entirely clear if the Plaintiff is asserting a disparate treatment claim, but to the extent she is, there are no genuine issue of material facts to preclude the court from awarding judgment to the Defendant on such a claim.

In order to prevail on a Title VII claim of discrimination, a plaintiff must first establish a prima facie case of discrimination consisting of the following elements: 1) plaintiff belongs to a protected class; 2) she was performing her job according to the employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) other employees with qualifications similar to her own were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *Id*. Once the defendant satisfies this burden, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is pretext for a discriminatory motive. *Id*. at 804.

The burden of proving pretextual discriminatory motive can be met by demonstrating that the employer's proffered explanation for its adverse employment decision is inconsistent or otherwise unbelievable. *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). The plaintiff may offer direct or circumstantial evidence of discriminatory animus. *Id*. at 1038. Direct evidence is evidence that proves discriminatory animus without the need for inference or presumption. *Id*. Such evidence typically consists of overtly discriminatory comments or actions by the employer and creates a triable issue for the finder of fact, even if the evidence is insubstantial. *Id*. Circumstantial evidence, which relies upon inferences and presumption, must be both specific and substantial in order to withstand summary judgment. *Id*.

Washington courts use the same burden-shifting analysis in evaluating claims under the Washington Law Against Discrimination (WLAD). *Roeber v.*

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 4**

*Dowty Aerospace Yakima*, 116 Wn.App. 127, 135, 64 P.3d 691 (2003).  Whether judgment as a matter of law is appropriate depends on the strength of the employee's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence supporting the employer's case.  If the record contains reasonable , but competing inferences of discrimination and nondiscrimination, the case should be determined by the trier of fact.  The ultimate question is whether there is sufficient evidence to reasonably conclude that discrimination was a substantial factor in the employee's discharge.  *Id*. at 136. Generally, when an employee produces his or her prima facie case plus evidence of pretext, a trier of fact must determine the true reason for the action because the record contains reasonable, but competing inferences of both discrimination and nondiscrimination.  *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 150, 94 P.3d 930 (2004).  The mere existence of a prima facie case based on the minimum evidence necessary to raise a presumption of discrimination is insufficient to raise a genuine issue of material fact as to pretext.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

      In order to demonstrate on summary judgment that an employer's stated rationale for an employment decision was pretextual, the employee must produce evidence from which a trier of fact could infer that the employer's articulated reasons for the employment decision: (1) have no basis in fact; (2) were not really motivating factors for the decision; or (3) were not motivating factors in employment decisions for other employees in the same circumstances.  *Dumont v. City of Seattle*, 148 Wn.App. 850, 867, 200 P.3d 764 (2009).  Direct evidence of discriminatory intent is not required.  Circumstantial, indirect and inferential evidence will suffice to discharge a plaintiff's burden.  *Id*. at 867-68.

      It is undisputed that Plaintiff belongs to a protected class by virtue of her gender and that she suffered an adverse employment action in that she was discharged not once, but twice.  She was discharged in May 2008 after an audit

**ORDER GRANTING DEFENDANT'S  
MOTION FOR SUMMARY JUDGMENT- 5**

conducted on May 14, 2008 revealed she had failed to deliver packages on her route and to properly record the missed deliveries.  She took responsibility for this and was terminated, although the termination was later reduced to a three day suspension pursuant to an agreement between the Defendant and Plaintiff's union. Plaintiff did not perform her job according to the legitimate expectations of her employer (Defendant) as embodied in its "Honesty In Employment" policy. Furthermore, there is simply no evidence that other employees who committed similar violations of company policy were treated more favorably.  Plaintiff was discharged again in November 2008 after stating to a supervisor, Nancy Olson, that she "cannot believe no one has gone postal at UPS, I might as well," and then pointing at the office of Dan Dejanovich and stating, "I wish he were dead."[4] This too was contrary to the legitimate expectations of Plaintiff's employer as embodied in its "Professional Conduct and Anti-Harassment Policy."  And there is no evidence that employees who committed similar violations of company policy were treated more favorably.

Accordingly, Plaintiff has not established a prima facie case of disparate treatment discrimination, nor can the adverse employment actions taken against her be considered retaliatory in any sense.

**D.  Hostile Work Environment**

Title VII bars not only discrimination as it is traditionally understood, but also hostile work environment harassment.  To prevail on a Title VII hostile workplace claim premised on gender and marital status, a plaintiff must show: 1)

---

[4] Following her filing of a union grievance, Plaintiff was reinstated to employment by UPS in January 2009 on the condition she undergo a psychological evaluation before returning to her workplace.  She completed the evaluation and was allowed to return to work.  She continues to be employed by UPS at this time.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

that she was subject to verbal or physical conduct of sexual nature; 2) that the conduct was unwelcome; and 3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). To determine whether conduct is severe and pervasive, the court looks at the context of alleged harassment to determine its frequency and severity, whether it is physically threatening or humiliating, and the extent to which it unreasonably interferes with the employee's work performance. *Id*. The working atmosphere must be both subjectively and objectively abusive. *Id*.

The same is true under the WLAD. To establish a hostile work environment harassment case under the WLAD, a plaintiff must prove: (1) the harassment was unwelcome; (2) the harassment was because of sex; (3) the harassment affected the terms or conditions of employment; and (4) the harassment is imputed to the employer.[5] *Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wn.App. 774, 794, 120 P.3d 579 (2005). A hostile work environment claim requires consideration of the totality of the circumstances and whether the conduct involved words alone, or also included physical conduct. *Clarke v. State Attorney General's Office*, 133 Wn.App. 767, 787, 138 P.3d 144 (2006). The conduct must be both objectively abusive and subjectively perceived as abusive by the victim. *Id*.

Plaintiff has not produced sufficient evidence to raise a genuine issue of material fact that she was subject to verbal or physical conduct of a sexual nature that was sufficiently severe or pervasive to alter the conditions of her employment. Plaintiff has not produced sufficient evidence to raise a genuine issue of material

---

[5] Federal regulations provide that an employer is responsible for workplace harassment if the alleged harassment is between "fellow employees" and the employer "knows or should have known of the conduct." 29 C.F.R. Section 1604.11(d).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 7**

<mark>Case 2:09-cv-00356-LRS    Document 27    Filed 01/21/11</mark>

1  fact that she was subject to a work atmosphere that was "objectively abusive."

2       At the time relevant to the incidents alleged in her complaint, Plaintiff was a
3  package car driver  assigned to the North Center at UPS's Spokane, Washington
4  plant.  Dan Dejanovich was the UPS Manager assigned to the Valley Center, a
5  separate facility located on the same property.  Plaintiff was bitten by a UPS
6  customer's dog while making a UPS delivery and filed a civil lawsuit against the
7  UPS customer.  The UPS customer was Mr. Dejanovich's personal cardiologist.
8  On May 13, 2008, Dejanovich approached the Plaintiff during work hours and at
9  her workplace and asked her about settling the lawsuit.  While this may have been
10 inappropriate, and perhaps even "unprofessional conduct" pursuant to UPS's
11 "Professional Conduct and Anti-Harassment Policy," there is nothing from which
12 to infer this was verbal conduct of a sexual nature motivated by Plaintiff's gender
13 and marital status.  It is just as reasonable to conclude Dejanovich would have
14 approached a male married or unmarried employee if that happened to be the type
15 of individual who had sued the UPS customer.[6]

16      On May 29, 2008, Plaintiff was reviewing her deliveries for the day when
17 Dejanovich walked by the Plaintiff, who was facing away, and flipped her hair bun
18 with his finger and said "What's up."[7]  A reasonable inference would be this was
19 not physical conduct of a sexual nature, but rather an ill-conceived and
20 inappropriate attempt by Dejanovich to follow up on the conversation the two had

---

[6] Plaintiff was audited the following day and suspected Dejanovich had something to do with it. (Brauss Dep. at p. 19; Ex. A to Garcia Declaration, Ct. Rec. 15-1).  As noted, however, Plaintiff admitted to the wrongdoing revealed by the audit and indeed, had been counseled about this type of deficiency in March 2008 (Ex. D to Person Declaration, Ct. Rec. 15-2 at SOF 86).  Plaintiff acknowledged that such audits of UPS employees are routine. (Brauss Dep. at p. 20)

[7] In her deposition testimony and declaration, Plaintiff indicates she was "struck" or "smacked" in the back of the head (Brauss Dep. at p. 63), although Plaintiff acknowledges she was not injured or physically hurt. (*Id*. at p. 64).  Dave Newcomb claims he witnessed the incident and that Dejanovich "flicked" Plaintiff's hair bun. (Ex. F to Person Declaration, Ct. Rec. 15-2 at SOF 96).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

on May 13, 2008, when Dejanovich asked Plaintiff what it would take for her to settle her lawsuit against Dejanovich's cardiologist. Dejanovich may not have been satisfied with that conversation. Flipping up the Plaintiff's hair bun was, without question, unprofessional conduct in the workplace and Defendant recognized as much by requiring Dejanovich to promptly apologize to the Plaintiff in front of the UPS District Manager and the union shop steward. Dejanovich's conduct was certainly unwelcome by the Plaintiff, but the court seriously questions whether it was motivated by Plaintiff's gender and marital status. Even assuming, however, that the conduct was so motivated, it was not sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. It was an isolated incident.

Since the May 29, 2008 incident, Plaintiff asserts that although Dejanovich has never said anything to her or touched her, he is present in the same building with her when she is in that building from twenty minutes to an hour in the morning. According to Plaintiff, Dejanovich has no business being in that building (the North Center) and his mere presence constitutes harassment. The record does not establish with specificity why Dejanovich, the manager of the Valley Center, would need to spend time in the North Center, but at the same time, the need for his presence cannot be dismissed considering the two centers are located on the same property and employ a total 200 to 300 employees between them. There is no evidence that Dejanovich has made a point of hovering around or over the Plaintiff as opposed to merely walking by the Plaintiff or being somewhere within Plaintiff's visual or hearing range. While Plaintiff may subjectively perceive Dejanovich's mere presence as harassment, the court concludes it does not objectively constitute harassment. There is no evidence that Dejanovich's mere presence since May 29, 2008 has unreasonably interfered with Plaintiff's work performance. She remains employed with Defendant at the current time. Furthermore, there is no evidence Plaintiff has ever complained to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 9**

her employer about the presence of Dejanovich in the North Center. As such, if Dejanovich's presence constituted harassment, there is no way that conduct could be imputed to the employer who was not aware of it and had no opportunity to correct it.[8]

## IV. CONCLUSION

The court finds as a matter of law that Plaintiff was not subject to a hostile work environment because of her gender and marital status, and that she was not otherwise discriminated against because of her gender and marital status. Accordingly, Defendant's Motion For Summary Judgment (Ct. Rec. 13) is **GRANTED** and Defendant is awarded judgment on all of Plaintiff's claims.[9]

**IT IS SO ORDERED.** The District Court Executive is directed to enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and close this file.

**DATED** this   21st   day of January, 2011.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Chief United States District Judge

---

[8] Dejanovich was not Plaintiff's supervisor. (Brauss Dep. at pp. 15 and 18). Therefore, he is treated as a co-worker for Title VII and WLAD purposes.

[9] Plaintiff concedes that judgment should be awarded to Defendant on her claim under the Americans With Disabilities Act (ADA).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 10**